UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN MAYER, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MGT CAPITAL INVESTMENTS, INC., ROBERT B. LADD, and JOHN MCAFEE, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Stephen Mayer ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding MGT Capital Investments, Inc.  ("MGT" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired MGT securities between May 9, 2016 and September 20, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      MGT, together with its subsidiaries, purports to acquire, develop, and monetize assets in the online, mobile, and casino gaming space. The Company operates through two segments, Gaming and Intellectual Property.  MGT was founded in 1979 and is based in Harrison, New York.  MGT's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "MGT."

3.      On May 9, 2016, MGT announced that it had entered into a definitive asset purchase agreement to acquire certain assets and technology from D-Vasive Inc. ("D-Vasive"), a provider of anti-spy software (the "D-Vasive Transaction").  In conjunction with the transaction, MGT announced the proposed appointment of Defendant John McAfee ("McAfee") as the Company's Executive Chairman and Chief Executive Officer ("CEO"), and that the Company intended to change its corporate name to John McAfee Global Technologies, Inc.  MGT further advised investors that "[m]ajor terms of the deal include the payment to D-Vasive Inc. stockholders of 23.8 million restricted shares of MGT stock and $300,000 in cash.  The proposed share issuance is expected to amount to roughly 47% of the Company on a pro-forma diluted basis at closing."

4.      On May 26, 2016, MGT announced that it had entered into a definitive asset purchase agreement to acquire certain technology and assets from Demonsaw LLC ("Demonsaw"), which the Company touted as "a provider of a secure and anonymous file sharing

software platform."  MGT further advised investors that "[m]ajor terms of the deal include the payment to Demonsaw LLC members of 20.0 million restricted shares of MGT common stock. The proposed share issuance is expected to amount to approximately 28% of the Company's common stock on a pro-forma fully diluted basis at closing, inclusive of shares of common stock to be issued in connection with the Company's previously announced transaction with D-Vasive, Inc."  The Company and D-Vasive would subsequently arrange for D-Vasive to purchase Demonsaw in advance of the D-Vasive Transaction, "in order to simplify these transactions, and meet certain customary tax issues," so that MGT would acquire Demonsaw's assets as well as D-Vasive's via the D-Vasive Transaction.

5.      On September 9, 2016, MGT announced that at the Company's 2016 Annual Meeting of Stockholders, its stockholders had approved, *inter alia*, the issuance of a total of 43.8 million shares of common stock in connection with the D-Vasive Transaction.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the NYSE was unlikely to approve the listing of the 43.8 million additional shares that the Company was required to issue to consummate the D-Vasive Transaction; and (ii) as a result of the foregoing, MGT's public statements were materially false and misleading at all relevant times.

7.      On September 19, 2016, pre-market, MGT announced that on September 15, 2016, the Company received a subpoena from the SEC requesting certain information from the Company.  MGT stated that it had no reason to believe that the Company is or will be the subject of any enforcement proceedings and was fully cooperating to comply with the SEC's request.

8.      On this news, MGT stock fell $0.74, or 22.7%, to close at $2.52 on September 19, 2016.

9.      Then, on September 20, 2016, pre-market, MGT announced that the NYSE had informed the Company on September 19, 2016 that it would "not approve the listing on the Exchange of the 43.8 million shares that the Company is required to issue in order to complete the closing of the D-Vassive [sic] merger," and that "[t]he Company and John McAfee remain committed to closing the transaction and are exploring alternatives."

10.     On this news, MGT stock fell $0.63, or 25%, to close at $1.89 on September 20, 2016.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant MGT is headquartered within this Judicial District.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, acquired MGT securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant MGT is incorporated in Delaware, and the Company's principal executive offices are located at 500 Mamaroneck Avenue, Suite 204, Harrison, New York 10528. MGT's common stock trades on the NYSE under the ticker symbol "MGT."

18.     Defendant Robert B. Ladd ("Ladd") has served at all relevant times as the Company's CEO, President, and Interim Chief Financial Officer.

19.     Defendant McAfee was named the Company's next Executive Chairman and CEO on May 9, 2016.  Pursuant to the employment agreement ratified by MGT shareholders at their annual meeting on or around September 8, 2016, McAfee's appointment as the Company's CEO will become effective upon the completion of the D-Vasive Transaction, at which time the Company purportedly intends to change its name to John McAfee Global Technologies, Inc.

20.     The Defendants referenced above in ¶¶ 18-19 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     MGT, together with its subsidiaries, purports to acquire, develop, and monetize assets in the online, mobile, and casino gaming space. The Company operates through two

segments, Gaming and Intellectual Property.  MGT was founded in 1979 and is based in Harrison,

New York.

**Materially False and Misleading Statements Issued During the Class Period**

22.     The Class Period begins on May 9, 2016, when MGT issued a press release and

filed a Current Report on Form 8-K with the SEC, announcing the D-Vasive Transaction and the

proposed appointment of Defendant McAfee as the Company's Executive Chairman and CEO.

The press release stated, in part:

> MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that it has
> entered into a definitive asset purchase agreement to acquire certain technology and
> assets from D-Vasive Inc., a provider of leading edge anti-spy software. . . .
>
> In conjunction with the acquisition, MGT is pleased to announce the proposed
> appointment of John McAfee as Executive Chairman and Chief Executive Officer.
> Mr. McAfee, the visionary pioneer of internet security, sold his anti-virus company
> to Intel for $7.6 billion, and is actively involved in the development of new
> measures to protect individual freedoms and privacy. Mr. McAfee stated, "The
> enormous impact of cybersecurity on our lives requires the scale and resources of
> a public company. Our ability to continue to hire the best minds in the business will
> be vastly enhanced with a public platform. With the acquisition of D-Vasive
> technology as a starting point, we expect to grow MGT into a successful and major
> force in the space." MGT Capital also intends to change its corporate name to John
> McAfee Global Technologies, Inc.
>
> . . .
>
> Closing of the acquisition is contingent on customary conditions including approval
> by MGT's stockholders. Major terms of the deal include the payment to D-Vasive
> Inc. stockholders of 23.8 million restricted shares of MGT stock and $300,000 in
> cash. The proposed share issuance is expected to amount to roughly 47% of the
> Company on a pro-forma fully diluted basis at closing.

23.     On news of the D-Vasive Transaction, MGT's share price climbed $0.13, or

34.36%, to close at $0.49 on May 9, 2016.

24.     On May 23, 2016, MGT filed a Quarterly Report on Form 10-Q with the SEC,

announcing the Company's financial and operating results for the quarter ended March 31, 2016

(the "Q1 2016 10-Q").  For the quarter, MGT reported a net loss of $1.34 million, or $0.07 per diluted share, on zero revenue, compared to a net loss of $1.29 million, or $0.11 per diluted share, on zero revenue for the same period in the prior year.

25.    In the Q1 2016 10-Q, MGT stated, in relevant part:

*John McAfee Global Technologies*

On May 9, 2016, the Company entered into an asset purchase agreement (the "APA") for the purchase of certain technology and assets of D–Vasive Inc., a Wyoming corporation ("D–Vasive"). The APA was entered into by and among the Company, D–Vasive, the shareholders of D–Vasive, and MGT Cybersecurity, Inc., a Delaware corporation wholly owned by the Company which is formed for the purpose of effectuating the asset purchase.

. . .

Upon the closing of the transaction contemplated in the APA, the Company will acquire the Purchased Assets in consideration for (i) $300 (the "Closing Cash"), (ii) 4,760,000 unregistered shares of Common Stock of the Company (the "Escrow Shares") to be held in escrow for six months pending satisfaction of the representation and warranties in the APA; and (iii) 19,040,000 unregistered shares of Common Stock of the Company (the "Closing Shares", and together with Escrow Shares the "Purchase Price Shares") The Closing Cash, the Escrow Cash and Closing Shares are collectively referred to as the "Purchase Price".

The APA includes customary representations and warranties of the parties as well as termination and closing conditions. The closing of the transactions contemplated in the APA is contingent on satisfaction or waiver of the closing conditions set forth therein including the approval of the Company's shareholders.

The Company also agreed as part of the closing conditions to enter into certain consulting agreement with Future Tense Secure Systems, Inc. certain employment agreements with key management of D–Vasive and an employment agreement with John McAfee pursuant to which Mr. McAfee will join the Company as Executive Chairman of the Board of Directors and Chief Executive Officer of the Company at the closing of the transaction contemplated in the APA. John David McAfee is the cybersecurity industry's pioneer and the developer of the world's first commercial anti-virus software. He founded McAfee Associates in 1987, which was acquired by Intel Corporation for $7.6 billion in 2010. Upon closing of the transaction the Company intends to change its corporate name to John McAfee Global Technologies.

There can be no assurance that the conditions to closing the transactions described herein can be obtained nor that the transaction will be approved by shareholders of the Company.

26.     The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Ladd, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On May 26, 2016, MGT issued a press release and filed a Current Report on Form 8-K with the SEC, announcing its intent to purchase the assets of Demonsaw.  The press release stated, in part:

> MGT Capital Investments, Inc . (NYSE MKT: MGT) announced today that it has entered into a definitive asset purchase agreement to acquire certain technology and assets from Demonsaw LLC , a provider of a secure and anonymous file sharing software platform. Using multiple layers of encryption (both symmetric and asymmetric), Demonsaw offers users full control of data and also offers private router services . Demonsaw is a fully decentralized, mesh-based network that does not use P2P, providing protection of IP addresses. Demonsaw is available in 32-bit and 64-bit versions for Windows, Apple OSX, Android, Raspberry Pi and Ubuntu.
>
> . . .
>
> Closing of the acquisition is contingent on customary conditions including approval by MGT's stockholders. Major terms of the deal include the payment to Demonsaw LLC members of 20.0 million restricted shares of MGT common stock. The proposed share issuance is expected to amount to approximately 28% of the Company's common stock on a pro-forma fully diluted basis at closing, inclusive of shares of common stock to be issued in connection with the Company's previously announced transaction with D-Vasive, Inc.

28.     On news of the Demonsaw Transaction, MGT's share price climbed $0.07, or 3.12%, to close at $2.31 on May 26, 2016.

29.     On July 8, 2016, MGT filed the Preliminary Proxy Statement (the "Proxy Statement") for its upcoming meeting of shareholders and issued a press release.  The press release stated, in part:

The Proxy includes information for stockholders to vote on the proposed issuance of shares to consummate the announced acquisitions of assets from D-Vasive, Inc. and Demonsaw LLC. In order to simplify these transactions, and meet certain customary tax issues, the two acquisitions have been effectively combined into one. This new structure was accomplished by D-Vasive purchasing Demonsaw, with MGT buying the combined company pending stockholder approval. MGT will acquire the same agreed-upon assets and the sellers will have received the same agreed-upon consideration. The total number of MGT common shares to be issued to D-Vasive is 43,800,000 (equaling the earlier 23,800,000 for D-Vasive and 20,000,000 for Demonsaw).

Stockholders will also vote on the election of John McAfee as Executive Chairman of the Board, the Company's name change to "John McAfee Global Technologies, Inc.", along with other proposals. Subject to SEC review, and mandatory notice requirements, MGT's shareholder meeting is still expected to occur in August 2016.

John McAfee, MGT's proposed Executive Chairman and Chief Executive Officer, stated, "We are pleased to file the proxy for the upcoming shareholder meeting, at which our shareholders will vote on various proposals to implement the previously announced strategic shift in MGT's business. We are excited to move a step closer towards positioning the Company to address various cyber threats through advanced protection technologies for enterprise and personal tech devices."

30.     The Proxy Statement put to the Company's shareholders, as "Proposal No. 3," the decision "To Authorize The Issuance Of 43,800,000 Shares Of Common Stock To Sellers In The APA [Asset Purchase Agreement], As Amended, In Accordance With NYSE MKT Company Guide Section 712."  Regarding the details of the D-Vasive Transaction, MGT stated, in part:

We, through our wholly owned subsidiary, MGT Cybersecurity, Inc. entered into the APA to acquire certain assets related to the D–Vasive business (as defined below). D–Vasive, Inc., a Wyoming corporation, is in the business of developing and marketing of certain privacy and anti–spy applications (the "D–Vasive Business"). Pursuant to the terms of the APA, the Company has agreed to purchase assets ("Purchased Assets") integral to the D–Vasive Business, including but not limited to applications for use on mobile devices, intellectual property, customer lists, databases, sales pipelines, proposals and project files, licenses and permits. Among the Purchased Assets is 100% of the membership interest in Demonsaw LLC, a company that is developing and marketing certain secure and anonymous information sharing applications that provide user–configurable levels of secrecy, privacy and anonymity as well as the D–Vasive application which is designed for protection from invasive applications that seek access to personal contacts, cameras and other information on smart phones, tablets and other mobile devices.

9

Upon the closing of the transaction contemplated under the APA, the Company will acquire the Purchased Assets in consideration of (i) $300,000 (the "Closing Cash"), (ii) 8,760,000 unregistered shares of Common Stock of the Company (the "Escrow Shares") to be held in escrow for six months pending satisfaction of the representation and warranties in the APA; and (iii) 35,040,000 unregistered shares of Common Stock of the Company (the "Closing Shares" together with Escrow Shares the "Purchase Price Shares"). The Closing Cash, the Escrow Cash and Closing Shares are collectively referred to as the "Purchase Price".

As a result of the APA, we will have acquired 100% of the common stock of D-Vasive and consequently, control of the business and operations of D-Vasive. D-Vasive is deemed the accounting acquirer while the Company remains the legal acquirer. The fair value of the net assets acquired such as, the goodwill and intangible assets were written off.

D–Vasive has also acquired all of the membership interest of Demonsaw LLC, a company that is developing and marketing certain secure and anonymous information sharing applications that provide user–configurable levels of secrecy, privacy and anonymity.

31.     The Proxy Statement was signed by Defendant Ladd.

32.     On July 11, 2016, MGT issued a press release addressing questions regarding the

Proxy Statement.  The press release stated, in part:

Since May, the market has known about the proposed issuances of 23.8 million shares to acquire D-Vasive, Inc. and 20.0 million shares to acquire Demonsaw LLC. Moreover, the stock has traded nearly a billion shares at these higher levels. Several biased investor websites and postings have attempted create the appearance that these proposed issuances were somehow never disclosed, resulting in potential confusion; this is simply not true.

. . .

The fact that naysayers now say that this issuance was not expected is plain wrong and self-serving. Potential investors have had two months to raise this question -- and many rightfully did -- but the market has thus far valued the shares based on the fully disseminated information. Mr. McAfee, MGT's proposed Executive Chairman and Chief Executive Officer, stated, "Clearly the market has expectations for my success, but my job and goal is to exceed the current hopes by executing on a sound business plan using leading edge technologies. We will provide much more granular detail after the deal closes, but suffice to say that we will focus on profitable opportunities in the enterprise and government sectors of the cyber security industry."

. . .

"There is an expression 'the market has spoken.' But it will be up to me and my team at MGT to create not only the value accorded to us already, but to vastly exceed this number," stated proposed Executive Chairman and CEO John McAfee. "In my opinion, for the naysayers to promote disinformation that we have disclosed any unexpectedly new or unfavorable information in last week's proxy, is very disingenuous to say the least. They start with the specific argument that the to-be acquired assets and John McAfee have no value. That is not an argument, it is merely their opinion, and one that has cost them money. That in turn makes them angry, spicing up their valuation opinion with personal attacks. Notwithstanding our stockholders' desire to expose illegal shorting activity and the brokerage firms behind illegal stock lending, we plan to stay above the dirt. There's another old market saw, 'He who sells was isn't his'n [sic] buys it back or goes to prison.'"

33.     On August 15, 2016, MGT filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  For the quarter, MGT reported a net loss of $6.09 million, or $0.29 per diluted share, on zero revenue, compared to a net loss of $0.85 million, or $0.06 per diluted share, on revenue of $0.26 million for the same period in the prior year.

34.     In the Q2 2016 10-Q, the Company stated, in relevant part:

MGT and its subsidiaries are in the process of acquiring a diverse portfolio of cyber security technologies. With cyber security industry pioneer, John McAfee, at its helm, the Company is positioned to address various cyber threats through advanced protection technologies for mobile and personal tech devices, including tablets and smart phones. The Company is currently in the process of acquiring D–Vasive, a provider of leading edge anti–spy software, and Demonsaw, a provider of a secure and anonymous file sharing software platform.

On May 9, 2016 we, through our wholly owned subsidiary, MGT Cybersecurity, Inc. entered into an Asset Purchase Agreement (the "D–Vasive APA") to acquire certain assets related to the D–Vasive business (as defined below). D–Vasive, Inc., a Wyoming corporation, is in the business of developing and marketing of certain privacy and anti–spy applications (the "D–Vasive Business"). Pursuant to the terms of the D–Vasive APA, the Company has agreed to purchase assets ("D–Vasive Assets") integral to the D–Vasive Business, including but not limited to applications for use on mobile devices, intellectual property, customer lists, databases, sales pipelines, proposals and project files, licenses and permits. Among the Purchased Assets is the D–Vasive application which is designed for protection from invasive applications that seek access to personal contacts, cameras and other

11

information on smart phones, tablets and other mobile devices. The Company intends to change its corporate name to "John McAfee Global Technologies, Inc." upon closing of the D–Vasive transaction.

On May 26, 2016, the Company entered into an asset purchase agreement (the "Demonsaw APA") with Demonsaw LLC, a Delaware company ("Demonsaw") and the shareholders of Demonsaw, for the purchase of certain technology and assets of Demonsaw. Demonsaw is in the business of developing and marketing certain secure and anonymous information sharing applications (the "Demonsaw Business"). Pursuant to the terms of the Demonsaw APA, the Company has agreed to purchase assets ("Demonsaw Assets") integral to the Demonsaw Business, including but not limited to the source code for the Demonsaw solution, intellectual property, customer lists, databases, sales pipelines, proposals and project files, licenses and permits. Among the Demonsaw Assets is the Demonsaw application which is designed for use in Windows and Apple operating systems. However, prior to the closing of this transaction, the Company and Demonsaw executed an agreement to terminate the Demonsaw APA, pursuant to Section 3.4 of the Demonsaw APA. Subsequently, D–Vasive entered into a Membership Interest Purchase Agreement (the "LLC Purchase Agreement") with the holders of all of Demonsaw's outstanding membership interest, whereby D–Vasive purchased all such membership interest from the Demonsaw members. The closing of the transaction contemplated under the LLC Purchase Agreement is contingent on, among other things, the closing of the transaction contemplated under the D-Vasive APA.

35.    The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendant Ladd, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

36.    On September 9, 2016, MGT issued a press release, announcing that the Company's shareholders had voted at their annual meeting to approve all of the proposals in the Company's Proxy Statement, including issuance of 43.8 million shares of common stock to consummate the D-Vasive Transaction and the ratification of Defendant McAfee's employment agreement with the Company.

The statements referenced in ¶¶ 22, 24-27, and 29-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) the NYSE was unlikely to approve the listing of the 43.8 million additional shares that the Company was required to issue to consummate the D-Vasive Transaction; and (ii) as a result of the foregoing, MGT's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

37.      On September 19, 2016, pre-market, MGT announced that on September 15, 2016, the Company received a subpoena from the SEC requesting certain information from the Company.  MGT stated that it had no reason to believe that the Company is or will be the subject of any enforcement proceedings and was fully cooperating to comply with the SEC's request.

38.      On this news, MGT stock fell $0.74, or 22.7%, to close at $2.52 on September 19, 2016.

39.      Then, on September 20, 2016, pre-market, MGT announced that the NYSE had informed the Company on September 19, 2016 that it would "not approve the listing on the Exchange of the 43.8 million shares that the Company is required to issue in order to complete the closing of the D-Vassive [sic] merger," and that "[t]he Company and John McAfee remain committed to closing the transaction and are exploring alternatives."

40.      On this news, MGT stock fell $0.63, or 25%, to close at $1.89 on September 20, 2016.

41.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MGT securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MGT securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MGT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MGT;

- whether the Individual Defendants caused MGT to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MGT securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

48.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MGT securities are traded in an efficient market;

15

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold MGT securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MGT securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire MGT securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MGT securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MGT's finances and business prospects.

55.     By virtue of their positions, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  By virtue of their positions, the Individual Defendants had knowledge of the details of MGT's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MGT.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MGT's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MGT securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning MGT's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired MGT securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

58.     During the Class Period, MGT securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of MGT securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of

MGT securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of MGT securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

61.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of MGT, and conducted and participated, directly and indirectly, in the conduct of MGT's business affairs.  Because of their positions, they knew the adverse non-public information about MGT's misstatement of income and expenses and false financial statements.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MGT's financial condition and results of operations, and to correct promptly any public statements issued by MGT which had become materially false or misleading.

64.     Because of their positions, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MGT disseminated in the marketplace during the Class Period concerning MGT's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MGT to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of MGT within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MGT securities.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of MGT. By reason of their senior management positions and/or being directors of MGT, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MGT to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MGT.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: September 23, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.   I, _____, make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against MGT Capital Investments, Inc. ("MGT" or the "Company"),

and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire MGT securities at the direction of plaintiffs counsel or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired MGT securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in MGT

securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _____
                  (Date)

_____
                (Signature)

_____
         (Type or Print Name)

**MGT CAPITAL INVESTMENTS INC (MGT)**                                     **Mayer, Stephen**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 6/10/2016 | Purchase | 500 | $2.4100 |
| 6/27/2016 | Purchase | 750 | $3.2400 |
| 7/15/2016 | Purchase | 800 | $3.6900 |
| 6/24/2016 | Sale | 500 | $3.0500 |
| 7/14/2016 | Sale | 750 | $3.3200 |